912 A.2d 206

**PITT OHIO EXPRESS**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (WOLFF)**

**Appeal of Duane Wolff.**

Supreme Court of Pennsylvania.

Argued Sept. 11, 2006.

Decided Dec. 27, 2006.

100

Lawrence R. Chaban, Esq., for Duane Wolff.

Daniel King Bricmont, Esq., Caroselli, Beachler, McTiernan & Conboy, L.L.C., Pittsburgh for amicus curiae Pennsylvania Trial Lawyers Association.

Charles Gerard Brown, Esq., Bridget M. Langer, Esq., Dickie, McCamey & Chilcote, P.C. for Pitt Ohio Express.

Thomas W. Corbett, Jr., Esq., Harrisburg, for Attorney General's Office.

Amber Marie Kenger, Esq., Richard C. Lengler, Esq., Workers Compensation Appeal Board, for WCAB.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER, BALDWIN, JJ.

## OPINION

Justice EAKIN.

On April 3, 1996, claimant Duane Wolff suffered a back injury while working as a truck driver for Pitt Ohio Express. He received total disability compensation benefits until November 4, 1997, when a Workers' Compensation Judge (WCJ) granted employer's petition to suspend benefits, concluding Wolff failed to pursue in good faith a modified position offered to him by employer. When Wolff later underwent back

surgery, in September, 2000, the parties executed a supplemental agreement to reinstate his total disability benefits as of the surgery date.

In October, 2001, employer filed a new petition to suspend benefits, arguing Wolff had recovered sufficiently to perform the modified position. During a hearing before the WCJ, Wolff acknowledged he was physically capable of performing the modified position. The WCJ suspended his benefits. The Workers' Compensation Appeal Board reversed, concluding claimant's benefits could not be suspended because employer failed to show the modified position was still available.

■ The Commonwealth Court reversed the Board and reinstated the WCJ's order suspending benefits, holding employer did not have to again prove job availability when the disability did not continue and claimant was able to perform the modified position he previously rejected in bad faith. *Pitt Ohio Express v. Workers' Compensation Appeal Board (Wolff)*, 2430 C.D.2004, unpublished memorandum at 9–10 (Pa.Cmwlth. filed May 4, 2005). We granted allowance of appeal to review this holding. Our standard of review for such a question of law is *de novo*, and our scope of review is plenary. *Craley v. State Farm Fire and Casualty Company*, 586 Pa. 484, 895 A.2d 530, 539 n. 14 (2006).

■ This Court set forth the general test when an employer seeks to suspend benefits:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374, 380 (1987).

The claimant in *J.A. Jones Construction Company v. Workers' Compensation Appeal Board (Nelson)*, 784 A.2d 280, 283 (Pa.Cmwlth.2001), rejected suitable, available employment in bad faith; as a result, the WCJ granted the employer's petition to reduce the claimant's benefits. Thereafter, the claimant's condition worsened, but by the time he sought to have full benefits reinstated, he recovered sufficiently to be able to perform the modified position. The Commonwealth Court agreed with the WCJ's decision to grant the claimant full benefits retroactively for the period of his worsened condition, but affirmed the WCAB's decision to reinstate reduced benefits from that point forward.

Significant to the present case, it did so without requiring the employer to reestablish job availability. *Id.*, at 282. The court reasoned the claimant's "total disability was not continuing, and, in fact, he is able to perform the job previously offered and rejected." *Id.*, at 283. The court held an employer is not required to again show the previously offered position remains available if the claimant initially rejected it in bad faith. *Id.See also Spinabelli v. Workmen's Compensation Appeal Board (Massey Buick, Inc.)*, 149 Pa.Cmwlth. 362, 614 A.2d 779, 780 (1992) ("Where we have a finding that a claimant has failed to pursue jobs in good faith, we do not believe the employer has the responsibility of keeping a job open indefinitely, waiting for the claimant to decide when he wants to work.").

This Court has not addressed this question. However, claimant argues that *General Electric Company v. Workers' Compensation Appeal Board (Myers)*, 578 Pa. 94, 849 A.2d 1166, 1171 (2004) (plurality), requires the deciding factor to be the reason for the subsequent unavailability of the rejected position, rather than a claimant's prior bad faith. In *General Electric*, we considered whether benefits were properly modified only for the period a rejected temporary position was available. The plurality stated "the claimant's benefits should only be modified for that period of time that the job was

available regardless of whether or not the claimant accepts the position or improperly refuses it." *Id.,* at 1173 (Nigro, J., joined by Cappy, C.J., and Castille, J.).

The claimant in *General Electric* was offered and rejected what the plurality determined to be a temporary, 90-day position; the plurality found the bad faith rejection of the temporary position permitted modification of benefits for that period only. Here, claimant contends, like *General Electric,* the modified position has become unavailable through no fault of his own, and consequently, employer is not entitled to suspend his benefits without demonstrating job availability.

Reliance on *General Electric* is problematic, as it was a plurality decision and is not binding precedent. *See Interest of O.A.,* 552 Pa. 666, 717 A.2d 490, 496 n. 4 (1998) (plurality, Cappy, J. joined by Flaherty, C.J., and Zappala, J.) ("While the ultimate order of a plurality opinion; i.e. an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority."). Moreover, claimant's efforts to apply it here are unpersuasive. In *General Electric,* the offered position was never more than temporary; claimant's acceptance would have caused a modification for only 90 days, hence his bad faith affected only a temporary modification. Here, the position offered to claimant was permanent. As it was rejected in bad faith, it is inaccurate to state claimant is blameless or is now in the same position as he would have been had he never been offered the modified position. What was temporary in *General Electric* was the reduction in benefits; what was temporary here was the reinstatement of benefits.

Claimant argues the Court must apply *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries),* 536 Pa. 490, 640 A.2d 386 (1994), and assign the burden of proof to the party seeking modification. The claimant in *Dillon* never acted in bad faith by rejecting a position. *Dillon* states a claimant must show "through no fault of his own his earning power is once again adversely affected...." *Id.,* at 393. Again, claimant is at fault because of his bad faith rejection

and cannot attempt to hide from that by misrepresenting this situation as a change in job availability. Moreover, claimant admitted he was able to perform the position he previously rejected. *Pitt Ohio Express,* at 3 n. 1.

Claimant's bad faith relieved employer of the requirement to again demonstrate a continued suitable position was available. An employer cannot be given a never-ending duty to keep a job available for a claimant who rejects it in bad faith. If we allowed a claimant to reject a job in bad faith and then place a burden on the employer to provide the claimant another job whenever he chooses, we would reward bad faith conduct and circumvent the purpose of the Workers' Compensation Act. As Madam Justice Newman's dissenting opinion in *General Electric* stated, rewarding bad faith conduct "chills the viable attempt of an Employer to return an injured worker to gainful employment." *General Electric,* at 1185 (Newman, J., dissenting).

■ Accordingly, we hold an employer will not be forced to prove job availability following a period of total disability after an employee has made a bad faith rejection of an available modified position.

Order affirmed. Jurisdiction relinquished.

Chief Justice CAPPY, Justice CASTILLE and NEWMAN and BALDWIN join the opinion.

Justice SAYLOR files a concurring opinion.

Justice BAER files a dissenting opinion.

Justice SAYLOR, concurring.

I concur in the result. I would emphasize that, in this case, the claimant's refusal to follow through on the initial offer of employment was not based upon a recommendation by his treating physician. Although the majority phrases its holding in broad terms, I question whether it should extend to circumstances in which a claimant reasonably relies on a physician's medical advice. This would seem to militate against affording an indeterminate preclusive effect to a finding of bad faith,

even though the doctor's conclusions might later be rejected by a workers' compensation judge in light of conflicting medical evidence adduced in the workers' compensation proceedings.

Justice BAER, dissenting opinion.

Today the Majority holds that where a claimant rejects an available modified job in bad faith, that claimant is thereafter saddled with the taint of his bad faith regardless of any changed circumstances related to the claimant's medical condition, and an employer is forever relieved of its burden of showing job availability for purposes of obtaining a suspension of benefits. Because I believe the Majority's decision does not comport with extant specific Pennsylvania statutory or case law or the more generalized but universally recognized humanitarian purposes of the Workers' Compensation Act, I respectfully dissent.

The facts of this case are relatively straightforward. On April 3, 1996, the claimant, Duane Wolff (Claimant), began receiving total disability benefits for an acknowledged and uncontested work-related back injury he suffered while employed with Pitt Ohio Express (Employer) as a truck driver. Thereafter, on November 4, 1997, Employer filed a petition to suspend Claimant's benefits arguing that Claimant was capable of performing light-duty work, but refused, in bad faith, to accept a then open light-duty position, which was commensurate with his abilities. The WCJ granted a suspension of benefits finding that Employer was able to demonstrate Claimant's ability to perform light-duty work, the availability of an appropriate position, and Claimant's bad faith refusal to accept that position.

Following a period of suspension, it is uncontested that Claimant once again became totally disabled, and was reinstated to full benefit status pursuant to a supplemental agreement entered into by Employer and Claimant in September 2000. Thirteen months later, in October 2001, Employer filed a new petition to suspend Claimant's total disability benefits, asserting that Claimant was, once again, physically capable of performing light duty work. The Employer, however, did not

submit evidence of a then-open light-duty position. Rather, Employer argued that because Claimant had once refused a light-duty position from Employer when his disability status had changed from full to partial, Employer was no longer required to show job availability.

The WCJ agreed and granted Employer's suspension petition. On appeal, the Workers' Compensation Appeal Board reversed holding that Employer was required to provide Claimant with an available job that he was capable of working. The Commonwealth Court then reversed the Board, reinstating the WCJ's decision, that Employer need not show job availability after Claimant had once refused to accept a light-duty job from Employer. We accepted allocatur to determine finally the issue.

As noted by the Majority, in *Kachinski v. Workmen's Compensation Appeal Bd. (Vepco Construction Company)*, 516 Pa. 240, 532 A.2d 374 (1987), this Court established the following requirements an employer must establish to meet its burden on a petition to suspend a claimant's benefits based upon a claim that the claimant's disability has changed:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job, then claimant's benefits should continue.

*Id.* at 380.

The Majority rules that Employer is not required to meet its burden on prong two of the foregoing test because Claimant had, on a previous occasion, refused an available job referral in bad faith. The Majority states that "[i]f we allowed a claimant to reject a job in bad faith and then place a burden

on the employer to provide the claimant another job *whenever he chooses*, we would reward bad faith conduct and circumvent the purposes of the Workers' Compensation Act." Majority Slip Op. at 5 (emphasis added). Respectfully, I believe the Majority, in so ruling, ignores the fact that in this case it is undisputed that Claimant's benefits were reduced after he had refused light-duty work but that he was receiving total disability benefits at the time *Employer* sought a new suspension of benefits.

This is not a case where the claimant refuses a position in bad faith and then, when the position is filled by Employer, *chooses* to obtain the position and seeks reinstatement to total benefits because the position is no longer available. Such was the situation in *Spinabelli v. Workmen's Compensation Appeal Bd. (Massey Buick),* 149 Pa.Cmwlth. 362, 614 A.2d 779 (1992). There, the claimant's benefits were reduced from total to partial based upon the fact that he refused, in bad faith, to perform a position offered by the employer within his physical capability. Thereafter, the claimant filed a reinstatement petition indicating that he was willing to accept the employer's modified-duty position but that because it was no longer available, total benefits should be reinstated.

The Commonwealth Court, in affirming the denial of reinstatement aptly noted that

> Where we have a finding that a claimant has failed to pursue jobs in good faith, we do not believe the employer has the responsibility of keeping a job open indefinitely, waiting for the claimant to decide when he wants to work. As the board states in its decision, claimant's loss of earning power is not due to his disability, but due to his lack of good faith in pursuing work made available to him, which was within his physical limitations. In order to receive a reinstatement of total disability benefits, claimant must prove a change in his condition such that he could no longer perform the jobs previously offered to him.

*Id* at 780.

In a case such as *Spinabelli*, I would agree that, without showing a change in physical status, the claimant is not

entitled to a reinstatement of benefits as his disability status continues because of his bad faith; but where, as here, the claimant is reinstated to full benefits based upon an uncontested change in his physical status, such that he can no longer perform light-duty work, if the employer seeks to once again suspend his benefits, all of the *Kachinski* requirements should be met anew, including the employer's requirement of demonstrating job availability.

Any decision contrary to one where, under these facts, an employer must anew meet the full *Kachinski* requirements would permit employers to lock in the claimant's disability status permanently at the time of his bad faith refusal regardless of a change in his physical condition. One's disability status, however, is not considered static under the Workers' Compensation Act. Rather, the Act contemplates a claimant's changing circumstances, particularly with regard to disability status, and therefore permits modification, reinstatement, suspension or termination at any time. *See Dillon v. Workmen's Compensation Appeal Bd. (Greenwich Collieries)*, 536 Pa. 490, 640 A.2d 386, 391 (1994) (noting that "determinations of the status of an injured employee's disability are subject to change," and that "[t]he [Act] itself explicitly provides that 'the board, or referee designated by the Board may, at any time, modify, reinstate, suspend, or terminate, an original or supplemental agreement award, upon petition filed by either party' ").

Finally, in addition to the foregoing analysis of the Act and the cases interpreting it, it is worthy of note that the Majority's holding is contrary to the bedrock principle that "the Pennsylvania Workers' Compensation Act is remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives." *Peterson v. Workmen's Compensation Appeal Bd. (PRN Nursing Agency)*, 528 Pa. 279, 597 A.2d 1116, 1120 (1991) (collecting cases). Accordingly, " '[b]orderline interpretations of [the] Act are to be construed in [the] injured party's favor.' " *Hannaberry HVAC v. Workers' Compensation Appeal Bd. (Snyder, Jr.)*, 575 Pa. 66, 834 A.2d 524, 528 (quoting

*Harper & Collins v. Workmen's Compensation Appeal Bd. (Brown),* 543 Pa. 484, 672 A.2d 1319, 1321 (1996)).

Because, in my view, Employer's argument is contrary to both the law and the wise policy upon which it is premised, I would reverse the order of the Commonwealth Court.